UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:06CR00326 ERW |
| JOSE PARKS, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND OPINION**[1]

This matter is before the Court on the Eighth Circuit Court of Appeals' ruling affirming in part, reversing in part, and remanding this case for re-sentencing proceedings. The Mandate of that Court was issued April 28, 2009, and a hearing was conducted on June 11, 2009, where the Government was represented by Assistant United States Attorney Thomas J. Mehan and Mr. Parks was present with counsel, Assistant Federal Public Defender Lucille G. Liggett. The Court heard arguments and requested that Mr. Parks remain in the District pending re-sentencing. On June 18, 2009, the Court entered a Memorandum and Order, and on June 29, 2009, with Mr. Parks present with counsel and the Government present by Assistant United States Attorney, additional arguments were heard. The Court is persuaded by the argument of Ms. Liggett that the Court's Memorandum and Opinion is flawed, in part, in its content and lack of analysis, and, accordingly, the June 18, 2009 Memorandum and Opinion is vacated.

**I. BACKGROUND**

---

[1]This Amended Memorandum Opinion reflects the following changes to page 8 only. First full sentence on line 10 now reads, "Ms. Liggett argued that the Court **erred** in looking at the underling facts of Mr. Parks' behavior in his State of Missouri conviction for escape from confinement." Miss Liggett has been changed to **Ms.** Liggett on line 14.

1

Mr. Parks entered a plea of guilty to a one-count indictment charging him with Possession With Intent to Distribute Heroin on August 11, 2006. Mr. Parks appeared for sentencing on November 27, 2006. Because the Court found that Mr. Parks' prior conviction for Escape From Confinement in case no. 891-02612 qualified him as a Career Offender under United States Sentencing Guidelines § 4B1.1, his sentence was fashioned at 151-months imprisonment in the United States Bureau of Prisons. The Court declared that his Total Offense Level was 29 and his Criminal History Category was VI. In the absence of a finding that he was a Career Criminal, his Total Offense Level would be 15, his Criminal History Category would be VI, and his sentencing range would have been 41-51 months.

## II. DISCUSSION

### A. The Eighth Circuit Opinion

Mr. Parks' conviction and sentencing was originally affirmed in *United States v. Jose Parks* (Parks I), 249 Fed. Appx. 484 (8th Cir. 2007). On remand from the United States Supreme Court, *Parks v. United States* (Parks II), 129 S. Ct. 994 (2009), the Eighth Circuit panel, in view of *Chambers v. United States*, 129 S. Ct. 687, 693 (2009), concluded that whether a walkaway escape is a violent felony under *Chambers* and *Begay* "remains an open question" and "[t]he record is not sufficiently developed for us to make this determination because the District Court, . . . limited its factual findings regarding Parks's escape conviction to the brief description of the offense in Parks's PSR." Accordingly, the Eighth Circuit remanded Parks' case for re-sentencing, and instructed "the district court to analyze Parks's prior escape conviction under § 575.210 in light of *Chambers* and *Begay*."

### B. *Chambers v. United States,* 129 S. Ct. 687 (2009).

At Deondery Chambers' sentencing, the sentencing court counted a prior conviction of "failure to report" for penal confinement as a predicate offense to qualify Mr. Chambers, with other prior offenses, as an Armed Career Criminal which carries a mandatory minimum fifteen-year sentence. The Supreme Court analyzed an Illinois statute which categorized "several different kinds of behavior":

> (1) escape from a penal institution, (2) escape from the custody of an employee of a penal institution, (3) failing to report to a penal institution, (4) failing to report for periodic imprisonment, (5) failing to return from furlough, (6) failing to return from work and day release, and (7) failing to abide by the terms of home confinement.

*id.* at 691. The Court noted,

> [t]he behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody. See *Begay v. United States, 553 U.S. __,__, 128 S. Ct. 1581, 1856, 170 L.Ed. 2d 490 (2008).* Moreover, the statute itself not only lists escape and failure to report separately (in its title and its body) but also places the behaviors in two different felony classes (Class Two and Class Three) of different degrees of seriousness.

*Id*. Furthermore, the Court stated that "failure to report" does "not have 'as an element the use, attempted use, or threatened use of physical force against the person of another.' § 924(e)(2)(B)(i)."[2] *Id.* at 691. The Court reasoned that failure to report conceptually amounts to a crime of inaction, not purposeful, violent and aggressive conduct. The Court noted, "[t]o the contrary, an individual who fails to report would seem unlikely, not likely, to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct." *Id.* at 692.

**C. *Begay v. United States,* 128 S. Ct. 1581 (2008).**

---

[2]The language of that provision provides, "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" Similar language appears in United States Sentencing Guideline § 4B1.1.

The Supreme Court in *Begay* decided that the offense of "driving under the influence of alcohol" is not a "violent felony" under 18 U.S.C. § 924, and consequently, the special mandatory minimum sentence of fifteen-years imprisonment was wrongly imposed. The applicable New Mexico statute has no provision similar to § 924(e)(i), which includes the language, "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" Neither did the Court find that the New Mexico DUI statute, involved "conduct that presents a serious potential risk of physical injury to another[.]" 18 U.S.C. § 924(e)(ii). The Court observed that driving under the influence statutes do not insist upon purposeful, violent and aggressive conduct, "rather, they are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have any criminal intent at all." *Id.* at 1586-87. The Court noted the obvious, "the Armed Career Criminal Act focuses upon the special danger created when a particular type of offender - a violent criminal or drug trafficker-possesses a gun." *Id.* at 1587.

**D.** *United States v. Williams*, **537 F.3d 969 (8th Cir. 2008)**

Williams was sentenced to an enhanced sentence because the sentencing judge erroneously concluded that two of Williams' prior convictions, auto theft and auto tampering, were violent felonies under Missouri law, which made him eligible to be sentenced under the Armed Career Criminal Act. The Eighth Circuit Court observed that "[t]he commentary to both § 2K2.1 and § 4B1.1 refer to § 4B1.2(a), which provides a definition of a "violent felony" in the Armed Career Criminal Act. *Compare* U.S.S.G. § 4B1.2(a) with 18 U.S.C. § 924(e)(2)(B)." The Court found no distinction between a "crime of violence" and a "violent felony." The Court's analysis turned to first deciding if auto theft and auto tampering were crimes of violence under the "otherwise" clause of the above mentioned Act and United States Sentencing Guidelines. The language of

4

that clause states that it "involves conduct that presents a serious potential risk of physical injury to another." To fall within the "otherwise clause," a crime must pose a similar degree of risk of physical injury as the example crimes, e.g. burglary, arson, extortion, and crimes involving use of explosives, and be similar in kind to the example crimes. A crime may present some degree of risk of physical injury as the example crimes and not be covered by the "otherwise clause," unless it is similar in kind to the example crimes. To be similar in kind to the example crimes, it "should typically involve 'purposeful, violent, and aggressive conduct.'" *Id.* at 972 (citation omitted). The Court stated that the prior analysis under *United States v. Sun Bear,* 307 F.3d 747 (8th Cir. 2002), focused solely on the degree of risk of physical injury associated with the crimes involved and, not whether they were similar in kind to the example crimes. The Court also stated that it is necessary to ask "whether auto theft involves conduct that is similarly 'purposeful, violent and aggressive' when compared to the conduct involved in auto thefts, closest analogue among the example crimes. *I*

*Id.* at 972. (citation omitted). A footnote cautions "when analyzing a predicate felony, *Begay* reiterates that courts should consider how the law defines the crime, not how a crime might be committed on a particular occasion." *Id.* at 973 n.1. Furthermore, the Court observed that *"Begay* emphasized that the 'otherwise' clause should only encompass crimes show[ing] an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger" Id. at 973. (citation omitted).

The Court in *Williams* explained that in its analysis, the statutory definition set forth three distinct offenses and, that to determine the closest analog among the examples, it was necessary to "look beyond the complete statutory definition of the crime to discover which part of the statute Williams violated." But, the Court limited its examination to the "charging document, the

5

terms of the plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or some comparable judicial record of this information." *Id.* at 973 (citation omitted).

To assist the District Court on remand, the Eighth Circuit panel then made a differential analysis, concluding that auto theft by deception was too unlike the example crimes. The Court, however, believed that auto theft by coercion was akin to a crime of extortion because of the inherent threat of violence and, therefore, it met the two-part *Begay* test. The Court did not believe that auto theft without consent was a crime of violence.

### E. The Relevant Missouri Statutes

**Mo. Rev. Stat. § 575.210 Escape or attempted escape from confinement**

> 1. A person commits the crime of escape or attempted escape from confinement if, while being held in confinement after arrest for any crime, or while serving a sentence after conviction for any crime, he escapes or attempts to escape from confinement . . .
> 2. Escape or attempted escape from confinement is a classD felony . . . .

"Escape" is defined in Mo. Rev. Stat. § 217.390:

> An inmate absenting himself without leave from any person in charge of his supervision, or from any work assignment, educational release program or job outside of the institution, or from any halfway house or correctional institution operated by another political subdivision to which he has been assigned, or who wilfully fails to return to such place at the appointed time after having been permitted to leave, shall be deemed on **"escape"** status. He shall be reported to the division to the appropriate law enforcement officer and upon conviction shall be sentenced for escape as provided in section 575.210, RSMo.

## II. DISCUSSION

Ms. Liggett is correct, and the Court is appreciative to her for observing that the Court, in its prior Memorandum and Opinion, referenced the wrong version of the statute under which Mr. Parks was charged and sentenced. Furthermore, the analysis did not track the latest Eighth

6

Circuit authority. She is correct, and her comments are well-received. The Court has now outlined above the statutes in Missouri that were in effect when Mr. Parks was charged and sentenced.

The Court in *Chambers* looked carefully at the wording of the Illinois statute under which Mr. Chambers was charged, noting that the Illinois statute

> places together in a single numbered statutory section several different kinds of behavior. It separately describes those behaviors as (1) escape from a penal institution, (2) escape from the custody of an employee of a penal institution, (3) failing to report to a penal institution, (4) failing to report for periodic imprisonment, (5) failing to return from furlough, (6) failing to return from work and a day release, and (7) failing to abide by the terms of home confinement.

*Id.* at 691.

The court then looked at Mr. Chambers' offense, "failure to report," and noted,

> we believe that a failure to report (as described in the statutory provisions third, fourth, fifth, and sixth phrases) is a separate crime, different from escape (the subject matter of the statute's first and second phrases), and from potentially less serious failure to abide by the terms of home confinement (the subject of the final phrase).

*Id.* After concluding there were differences in the seriousness of the proscribed behaviors, the Cou rt observed that the behavior underlying failure to report "would seem less likely to invoke a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody." *Id.*

Next, the Court turned to whether the failure to report crime satisfied the Armed Career Criminal Act's violent felony definition. The Court decided it did not, because it did not have "as an element the use, attempted use, or threatened use of physical force against the person of another [,] . . . [a]nd more critically for present purposes, it does not 'involve conduct that presents a serious potential risk of physical injury to another.'" *Id.* at 691 (internal citation to *Begay* omitted).

7

Obviously, the Missouri Statutes applicable in this case and the Illinois Statute analyzed in *Chambers* are different. The Eighth Circuit opinion issued in this case states, "[m]oreover, the record also suggests § 575.210 is potentially over-inclusive because it may include failure to report or return offenses. That conclusion seems correct in reading that Statute in concert with § 217.390, RSMo1982. The Missouri statutory scheme has no proscription for "failure to report." Numbered paragraph (1) of the Illinois Statute and the first sentence of Mo. Rev. Stat. § 217.230 cover the same behavior, customarily considered as escape from confinement.

A contestation between counsel arose at the June 11, 2009 hearing, which focused on the scope of information this Court is permitted to consider in complying with the Eighth Circuit's Mandate. Ms. Liggett argued that the Court erred in looking at the underlying facts of Mr. Parks' behavior in his State of Missouri conviction for escape from confinement. She argued that the Court should look only at the statutory scheme to determine if the elements of the underlying statute qualify Mr. Parks as a Career Offender under the United States Sentencing Guidelines. The Court concludes that she is correct, and that the analysis needs to be expanded. Ms. Liggett maintains that the transcript of proceedings in Mr. Parks' plea of guilty in case no. 891-02612 on the charge of Escape From Confinement entered on December 15, 1989, in the Circuit Court for the City of St. Louis for the 22nd Judicial Circuit, should not be considered in making factual conclusions in this case. Mr. Mehan advocates that while the Court is not allowed to hear additional evidence concerning Mr. Parks' prior escape conviction, it is permissible to examine the court records. In attempting to satisfy this Court's obligation to be obedient to the Eighth Circuit's Opinion, the Court will consider the wording of the Indictment and Plea Transcript from case no. 891-02612, both of which were attached to Mr. Parks' sentencing memorandum in this case. The records are in the file that the Court is permitted to examine in this re-sentencing. A

"sentencing court may look, for example, to charging document, plea agreement, jury instructions, or transcript of plea colloquy to determine crime at issue." *Chambers,* 129 S. Ct. at 691.

The pertinent part of the Indictment of Mr. Parks' predicate offense states "that the defendant, in violation of Section 575.210, RSMo, committed the class C[3] felony felony *sic* of escape from confinement . . . ." (emphasis supplied). At the change of plea hearing and the later sentencing hearing on December 15, 1989, Mr. Parks was advised in open court, in the presence of counsel, that the offense for which he was pleading guilty was a Class D felony, which carried a range of punishment of "up to five years." The Parties agree that Mr. Parks was convicted of a Class D felony. In that same plea hearing, in case no. 891-02612, the prosecutor told the judge in the presence of the Defendant and his counsel that the State could prove beyond a reasonable doubt that on

> June 11, 1989, approximately 4:35 p.m., . . . at the Department of Corrections and Human Resources, the St. Mary's Honor Center, the defendant Jose Parks escaped from St. Mary's Honor Center by running past the front door officer and out the door at about the stated time as the door was opened for a routine intake of returning inmates. Mr. Parks did not have permission nor was authorized to leave the premises at this time[4].

---

[3] Under the statutory scheme in Missouri, a class C felony is a more serious offense which carries a more severe penalty than a class D felony.

[4] While Ms. Liggett argues that the Court should not consider facts outside the record, she argues that the "St. Mary's Honor Center was in fact closer to an 'unfenced or unguarded area' than the hypothetical contrast would suggest;" purported facts clearly outside the record. (Def. Motion for Reconsideration of Court's Mem. and Op. pp. 12-13). She is not persuasive in arguing that Mr. Parks' offense was a walk-a-way crime, based on facts which the Court is entitled to consider. He timed his escape specifically when the door was opened for routine intake returning inmates, running "past the front door officer." The Court, as noted, has looked at the Missouri statutory provisions in place when Mr. Parks received the Escape conviction. Mr. Parks' conduct in running past a front door officer to free himself from the conditions of being involuntarily confined in the Department of Corrections at the St. Mary's Honor Center is different behavior than that described in the factual recitation of the *Chambers'* case. There, the

Mr. Parks did not disagree with that statement at the plea hearing.

The issue to be resolved, based on the statutory scheme of Missouri, is whether under United States Sentencing Guideline § 4B1.1, Mr. Parks' 1989 conviction of escape from confinement in case no. 891-02612 is a crime that qualifies Mr. Parks as a Career Offender under United States Sentencing Guideline § 4B1.1(a) which provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

.

A crime of violence is defined in United States Sentencing Guideline § 4B1.2:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that - -
>   (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>   (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise <u>involves conduct that presents a serious potential risk of physical injury to another</u>.

---

defendant had a choice of respecting a court order by appearing at a place to be confined, or to remain free, posing no immediate threat of violence to himself or anyone. In the present case, the front door officer was place to interfere with those on the inside of the enclosure, without permission, from getting on the outside of the enclosure. It s reasonable to conclude that in the ordinary course of the execution of the officer's duty, she or he would not be expected to stand passively and watch a resident leave the Center. Rather, some effort in the form of physical restraint by the officer would be indicated. Under the circumstances of this case, Mr. Parks did not dispute that he ran throug the door, past the front door officer, timing his actions when other inmates were received in the building, a time best suited for escape. Such behavior involved conduct that presented a serious potential risk of physical injury to another. The serious potential risk of physical injury was presented to a front door officer in a position to exercise physical restraint against Mr. Parks, to another inmate entering through the guarded space, administrative personnel in the area, or to a visitor in the protected guarded space through which Mr. Parks ran. The facts of this case are different from those where a person fails to appear at a designated location for confinement or where an inmate walks away from an unfenced or unguarded area where there would be no conduct to present a serious potential risk of physical injury to another.

10

USSG, § 4B1.2. (emphasis supplied).

Mr. Parks was indicted for the crime of "escape from confinement" under Mo. Rev. Stat. § 575.210. He was confined by the Missouri Department of Corrections. The language for the definition of "Escape," for the purposes of this analysis, taken from Mo. Rev. Stat. § 217.390 includes "[a]n inmate absenting himself without leave from any person in charge of his supervision . . . ." Comparing the statutory language to the "example crimes," of those limited examples given in *Begay*, it becomes obvious that when specific statutory elements of the example crimes are compared to the statutory elements of escape from confinement, there is no match on a comparison of element to element. However, the Court is persuaded that a strict element by element comparison of the subject crime to the example crimes is not what was intended, otherwise there would be few matches. Instead, the analysis in *Begay* notes that "examples in clause (ii) limit the scope of the [otherwise] clause to crimes that are similar to the examples themselves." 128 S. Ct. at 1585. The Court went on to say that Congress expanded the definition in the Act to expand crimes against persons and certain physically risky crimes against property, but rejected covering every offense involving a substantial risk of the use of physical force against the person or property of another, and added examples. In dealing with the DUI offense at issue in *Begay,* the Court said DUI differs from the example crimes because the "listed crimes all typically involve purposeful, 'violent' and 'aggressive' conduct." *Id.* at 1586.

An examination of the "example crimes" is helpful in the analysis. *Begay* lists "Burglary of a dwelling" as the first example crime. Burglary of a dwelling is commonly known as first degree burglary. That crime adds to the offense of second degree burglary, in Missouri, the elements of "armed with explosives or a deadly weapon" or "causes or threatens immediate physical injury to any person . . ." or "there is present in the building a person who is not a participant in the crime."

11

That crime has the element of purpose and if the offender causes harm, violence and aggressive conduct occurs alternatively if a threat is made, there is the existence of aggressive conduct. However, the analysis is confused because *Begay* references what is commonly known as second degree burglary on page 1586, "('burglary' is an unlawful or unprivileged entry into a building or other structure with "intent to commit a crime')," which has no statutory reference to violence or the threat of violence or aggressive behavior. As with escape from confinement, the crime which most closely matches this burglary definition of the example crimes, there is a high likelihood of violence and aggressive conduct in the execution of the escape.

The *Begay* opinion next references "arson," stating "('arson' is causing a fire or explosion with the 'purpose of,' e.g. 'destroying building . . . of another' or 'damaging any property . . . to collect insurance')." Clearly, causing a fire or explosion to destroy a building or damage property speaks of violence and aggressive behavior. The *Begay* opinion also references "extortion" stating "(extortion is 'purposely' obtaining property of another through threat of, e.g., inflicting 'bodily injury')." This example crime also has violence and aggressive behavior embodied in its definition. *Id.* at 1586.

It is clear that *Begay* does not require element by element comparison between the example crimes and the subject crime. "These considerations taken together convince us that, 'to give effect . . . to every clause and word' of this statute, we should read the examples as limiting the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id*. at 1585. (citations omitted).

The *Begay* Court makes it clear that the word "otherwise" is not sufficient to demonstrate that the examples do not limit the scope of the clause, but "'[o]therwise' can refer to a crime that is similar to the listed examples in some respects but different in others-similar say in respect to

12

the degree of risk it produces, but different in respect to the 'way or manner' in which it produces that risk." *Id.* at 1586.

Escape from confinement, as noted, has similarities to the defined crime of burglary in some respects. The offender, in each instance, is in a building or enclosure with the purpose of committing a crime. More significantly, however, is the similarity of escape from confinement to not only burglary, but also to the other example crimes as to the degree of risk the offense produces, even though different in respect to the "way or manner" in which the risk is produced. There is a similar degree of risk and threat of injury to others, i.e. watchpersons, guards, other inmates and innocent bystanders, in the execution of escape. The existence of violence and aggressive behavior and threat of injury to others exists in the case of escape from confinement as in the case of the example crimes burglary, arson and extortion.

Finally, as noted in the cite above, *Chambers* recognizes the risk of physical harm, violence and aggressive behavior in an escape from custody. "The behavior that likely underlies a failure to report would seem less likely <u>to involve a risk of physical harm than the less passive, more aggressive behavior underlying an escape from custody</u>." *Id.* at 691. (emphasis supplied) (citation omitted).

The Court finds that the escape offense of Mr. Parks qualifies as a violent felony under United States Sentencing Guideline § 4B1.1, his Total Offense Level is 29, his Criminal History Category is VI, and his Sentencing Guideline Range is 151 to 188 months.

**ACCORDINGLY**, it is ordered that Jose Parks appear for re-sentencing before this Court on **July 22, 2009**, at **12:00 p.m.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Reconsideration of Court's Memorandum and Opinion [doc. #59] is **DENIED**.

So Ordered this 9th Day of April, 2010.

                                                    _____
                                                    E. RICHARD WEBBER
                                                    UNITED STATES DISTRICT JUDGE